
**FILED**
**Jul 16, 2019**
**12:15 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| JEANETTE CORNELISON, | ) | Docket No. 2019-07-0058 |
|     Employee, | ) | |
| v. | ) | |
| JTN LODGING, LLC, | ) | State File No. 43390-2018 |
|     Employer, | ) | |
| And | ) | |
| EMPLOYERS PREFERRED INS. CO., | ) | Judge Allen Phillips |
|     Carrier. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND DENYING TEMPORARY DISABILITY BENEFITS

---

Ms. Cornelison requested additional medical benefits and temporary disability benefits for injuries to her right knee and back. JTN contended it paid all medical benefits to which she was entitled and denied she was entitled to temporary disability benefits. The Court conducted an Expedited Hearing on June 27, 2019, and holds Ms. Cornelison would likely prevail on her request for additional medical benefits but not temporary disability benefits.

### History of Claim

Ms. Cornelison tripped and fell on both knees. JTN provided a panel of orthopedic surgeons that included Dr. John Masterson and Dr. Michael Smigielski. She chose Dr. Masterson but later saw Dr. Smigielski for a second opinion.

Dr. Masterson noted her history and diagnosed, among other conditions, right-knee pain.[1] An MRI of the right knee revealed a torn meniscus, and Dr. Masterson recommended an injection for both "diagnostic and therapeutic purposes." Specifically,

---

[1] Ms. Cornelison complained of injuries to other body parts, which are not relevant to the issues here. Also, Dr. Masterson was not deposed; thus, the Court takes his statements and opinions from his office notes.

1

he said if the injection improved Ms. Cornelison's symptoms, he contemplated returning her to full duty. Conversely, if the injection provided "only temporary relief," he would consider arthroscopic surgery to repair the meniscal tear. Ms. Cornelison's response to the injection led Dr. Masterson to recommend surgery. As to causation, he stated the meniscal tear was "greater than 51%" related to the work injury.

While evaluating her knee, Dr. Masterson also noted complaints of "burning pain" in Ms. Cornelison's leg. He could not explain the pain but added she had no history of "neuropathy" before the fall. He also noted Ms. Cornelison neither had back pain nor did she report a back injury when she fell. Regardless, he recommended she undergo a nerve study to evaluate the burning pain because he wanted the results before performing surgery.

The nerve study proved normal. Nevertheless, Dr. Masterson called Ms. Cornelison's complaints "nerve type pain." Moreover, because her pain was nerve-related rather than knee-related, Dr. Masterson reversed his earlier causation opinion and said he "would not be able to recommend a right knee arthroscopy." Ms. Cornelison asked for a second opinion. Dr. Masterson agreed.

Ms. Cornelison testified that JTN's nurse case manager scheduled a second opinion with Dr. Smigielski. Testifying by deposition, Dr. Smigielski said Ms. Cornelison complained of both knee and leg pain. He suspected her leg pain was sciatica, a type of pain caused by nerve impingement in the lower back. He recommended an MRI of her lumbar spine to check for impingement. He also confirmed she needed a right-knee arthroscopy for the torn meniscus.

Ms. Cornelison testified that JTN, through the case manager then returned her to Dr. Masterson. Instead of obtaining the lumbar MRI as Dr. Smigielski recommended, Dr. Masterson recommended a Functional Capacity Evaluation (FCE) to determine which work activities Ms. Cornelison might perform given her knee injury. He also reiterated his belief that she did not need knee surgery. Ms. Cornelison disagreed with Dr. Masterson's FCE recommendation and with his opinion on surgery.

In explaining himself, Dr. Masterson noted the nerve testing was normal and that Ms. Cornelison had not complained of a back injury or back pain. He "explained to her exhaustively" that he could not relate her complaints of a back injury to work event. Regardless, he administered another knee injection to treat the meniscal tear. When Ms. Cornelison claimed he deliberately injected her "in the wrong spot," Dr. Masterson declined to see her again. However, he later placed her at maximum medical improvement and listed a "medial meniscal tear" as one of the final diagnoses. He assessed an impairment rating for the meniscal tear and released her to full duty.

After Dr. Masterson refused to see her, Ms. Cornelison requested that JTN allow her to return to Dr. Smigielski. She testified without rebuttal that she received no response, so she returned to Dr. Smigielski on her own.

Ms. Cornelison then underwent the MRI of her lumbar spine, and it revealed nerve impingement. Dr. Smigielski testified that the impingement caused Ms. Cornelison's sciatica, and he recommended an anesthesiologist perform a nerve block. He also referred her to another orthopedic surgeon for consideration of the arthroscopy. Regarding causation, Dr. Smigielski testified that "he would say so" when asked if the workplace accident was "more likely than not" the cause of the torn meniscus. Further, in a letter to Ms. Cornelison's counsel, Dr. Smigielski stated: "I would say her knee injury and sciatica were related to her work accident."

Dr. Smigielski also testified Ms. Cornelison should remain off work until she saw the anesthesiologist. During Dr. Smigielski's deposition, Ms. Cornelison's counsel presented him with a note (not in evidence) from an anesthesiologist purportedly restricting Ms. Cornelison from work. Dr. Smigielski testified he could neither agree nor disagree with the purported restrictions because he does not perform nerve blocks. Likewise, when presented with the orthopedic surgeon's recommendations for time off work, Dr. Smigielski testified he did not know of any periods she actually missed.

At the hearing, Ms. Cornelison testified that all of her pain, both in her knee and her leg, began after the accident. She did not know that the sciatica was related to nerve impingement in her back until Dr. Smigielski told her it was. Further, she argued that Dr. Masterson recorded her complaints of leg pain throughout his treatment but admitted he did not know its source. Conversely, she asserted Dr. Smigielski properly diagnosed her sciatica and confirmed it by MRI. She argued Dr. Smigielski's testimony provided the necessary causal relationship between both injuries.

Further, Ms. Cornelison remained adamant that she requested additional medical treatment after Dr. Masterson refused to see her and she never received a response. Therefore, she went to Dr. Smigielski on her own but has not received the recommended treatment.

Ms. Cornelius requested the Court designate Dr. Smigielski as her authorized treating physician for her knee and back. She pointed out that he was on the original panel and that JTN scheduled the second opinion with him. She also requested temporary disability benefits from the time Dr. Smigielski first took her off work through the present.

For its part, JTN argued Dr. Masterson's opinions are presumed correct. Namely, he placed Ms. Cornelison at maximum medical improvement and stated she did not need surgery. He also did not relate any back injury to her work. Thus, JTN asserted it owes no

3

further medical benefits. Additionally, JTN asserted Dr. Smigielski was only a second opinion, and it did not intend to transfer care. Thus, JTN concluded Ms. Cornelison must return to Dr. Masterson or, alternatively, it would provide a new panel.

## Findings of Fact and Conclusions of Law

At this Expedited Hearing, Ms. Cornelison must show a likelihood of prevailing at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2018).

### *Medical Benefits*

### *a) Causation*

To receive medical benefits, Ms. Cornelison must establish her injuries arose primarily out of her employment and caused her *"need for medical treatment*[.]" Tenn. Code Ann. § 50-6-102(14) (Emphasis added). An injury arises primarily out of the employment only if it has been shown to a reasonable degree of medical certainty that the work contributed more than fifty percent in causing the injury when considering all causes. "Shown to a reasonable degree of medical certainty" means that it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(14)(A)-(D).

Here, Dr. Smigielski testified he "would say so" when asked if the work injury more likely than not caused Ms. Cornelison's need for the knee arthroscopy. He also stated that he "would say her knee injury and sciatica were related to her work accident." In *Panzarella v. Amazon.com, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30 (May 15, 2017), the Appeals Board held a causation opinion satisfies the required legal standard even if it is not "a rigid recitation of the statutory definition" so long as there is "sufficient proof" of the statutory requirements of an injury. *Id.* at *14. In this case, the Court finds Dr. Smigielski's testimony sufficient to satisfy the statutory definition of an injury as to both the knee and back.

Further, though Dr. Masterson initially said Ms. Cornelison's torn meniscus was "greater than 51%" related to the work event, he later reversed his opinion. Thus, the Court must consider whether his opinion or Dr. Smigielski's is correct. When faced with conflicting opinions, the Court may conclude that the opinion of one expert should be accepted over that of another and that it contains the more probable explanation. *Ledford v. Mid-Georgia Courier, Inc.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *8 (June 4, 2018). The Court holds Dr. Smigielski provided the more probable explanation.

Specifically, the Court first considers Ms. Cornelison's testimony that *all* of her pain, both in her knee and leg, resulted from the work injury. Her testimony is probative on the issue of causation, and the Court both believes her and finds her credible. *See Arciga v. AtWork Personnel Serv.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7 (Feb.

4

2, 2016). Second, Dr. Smigielski obtained an MRI that objectively established sciatica as the cause of Ms. Cornelison's leg pain. Third, Dr. Masterson recorded Ms. Cornelison's complaints of burning pain in her leg throughout his treatment and recommended its evaluation by nerve testing. Dr. Smigielski verified Ms. Cornelison's leg pain was separate from her knee pain, thus establishing both sciatica and a knee injury.

Finally, the Court holds Ms. Cornelison rebutted the presumption of correctness attached to Dr. Masterson's reversal of opinion contained in his medical records by a preponderance of the evidence through the sworn testimony of Dr. Smigielski. *See* Tenn. Code Ann. § 50-6-102(14)(E) (the causation opinion of a panel physician is presumed correct subject to rebuttal by a preponderance of the evidence).

In summary, the Court holds Ms. Cornelison would likely prevail at a hearing on the merits that her work injury caused the need for treatment of both her right knee and back.

### a) Treatment by Dr. Smigielski

Ms. Cornelison testified without contradiction that she asked JTN to provide further treatment before she returned to Dr. Smigielski. That request complies with Tennessee law requiring an employee to give the employer an opportunity to provide treatment each time the employee reasonably requires it. *Greenlee v. Care Inn of Jefferson City*, 644 S.W.2d 679, 680 (Tenn. 1983). However, Ms. Cornelison must also show she was justified in seeking further treatment. *See Pickett v. Chattanooga Convalescent and Nursing Home, Inc.*, 627 S.W.2d 941 (Tenn. 1982).

Here, the Court finds Ms. Cornelison justified in continuing treatment with Dr. Smigielski. Dr. Masterson stated he would not see her again, and he placed her at maximum medical improvement, by definition an assertion that he had nothing more to offer. To the contrary, Dr. Smigielski diagnosed sciatica, a condition separate and apart from the meniscal tear, and said Ms. Cornelison needed treatment for both conditions. A reasonable person in Ms. Cornelison's position would want further treatment for both conditions, given that they flowed from the same injury and caused her disablement.

Likewise, the Court finds it appropriate to designate Dr. Smigielski as the authorized treating physician because Ms. Cornelison developed a relationship with him after JTN forced her to seek treatment on her own. Further, JTN set the second opinion with Dr. Smigielski and put him on the initial panel. JTN cannot ask to provide another panel at this late date. "A belated attempt to insist that an injured worker treat with a panel physician after the worker has established a doctor-patient relationship with another physician will not succeed, particularly when the employer has pointed to no rationale to require the change in physicians other than an assertion of its statutory right." *Ducros v. Metro Roofing and Metal Supply Co., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 62, at *11 (Oct. 17, 2017). The Court holds Dr. Smigielski is the authorized treating physician.

*Temporary disability benefits*

To receive temporary disability benefits, Ms. Cornelison must establish that (1) she became disabled from working due to a compensable injury; (2) a causal connection between her injury and her inability to work; and (3) her period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). The Court holds she did not establish the required elements.

Specifically, though Dr. Smigielski testified he took Ms. Cornelison off work until she saw an anesthesiologist, he deferred to the anesthesiologist regarding any time off work following a nerve block. Ms. Cornelison presented no proof of when she saw an anesthesiologist or any period he had her off work. Likewise, though Dr. Smigielski referenced a note from an orthopedic surgeon regarding time off, Ms. Cornelison did not have surgery or provide evidence regarding when a surgeon took her off work. Given this lack of evidence, the Court holds Ms. Cornelison is not entitled to temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. JTN shall provide Ms. Cornelison additional reasonable and necessary medical treatment for both her knee and back under Tennessee Code Annotated section 50-6-204(a)(1)(A). Dr. Smigielski is designated the authorized treating physician.

2. Ms. Cornelison's claim for temporary disability benefits is denied at this time.

3. The case is set for a Status Hearing on **Monday, September 9, 2019, at 9:00 a.m. Central Time. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED July 16, 2019.**

**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Deposition of Dr. Michael Smigielski
2. Medical Records of:
   o Dr. John Masterson
   o Dr. Ronald Bingham
   o Physical Therapy of Jackson (FCE)
3. Dr. Masterson's Final Medical Report (C-30A)
4. Employee's Choice of Physician Form (C-42)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Order Converting to Request for Expedited Hearing
5. Transfer Order
6. Employee's Witness and Exhibits List
7. Employer's Witness and Exhibits List
8. Employer's Pre-Hearing Brief

7

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on July 16, 2019.

| Name | Via Email | Service Sent To: |
|---|---|---|
| David Hardee, Employee's Attorney | X | kperry@hmdlaw1.com |
| Tiffany Sherrill, Employer's Attorney | X | tbsherrill@mijs.com |

Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov

8



## Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**

**Type of Case** [Check the most appropriate item]

- ☐ Temporary disability benefits
- ☐ Medical benefits for current injury
- ☐ Medical benefits under prior order issued by the Court

**List of Parties**

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*Attach an additional sheet for each additional Appellee *

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.


[Signature of appellant or attorney for appellant]  _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                           RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

    Groceries      $ _____ per month    Telephone    $ _____ per month

    Electricity    $ _____ per month    School Supplies $ _____ per month

    Water      $ _____ per month    Clothing    $ _____ per month

    Gas       $ _____ per month    Child Care    $ _____ per month

    Transportation $ _____ per month    Child Support  $ _____ per month

    Car       $ _____ per month

    Other     $ _____ per month (describe: _____ )

10. Assets:

    Automobile      $ _____    (FMV) _____

    Checking/Savings Acct. $ _____

    House       $ _____    (FMV) _____

    Other       $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____ .

_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082